IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DEBORAH LANDWEHR,                )
                                 )
                  Plaintiff,     )
                                 )
vs.                              )        Case No. 08-1154-WEB
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                  Defendant.     )
_____)


RECOMMENDATION AND REPORT


        This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.   The matter has been fully briefed by the
parties and has been referred to this court for a recommendation
and report.

**I.  General legal standards**

        The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."   The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

Plaintiff applied for disability insurance benefits on September 14, 2001, alleging disability since May 31, 2001 (R. at 342).  On May 23, 2003, administrative law judge (ALJ) William H. Rima III issued his 1st decision (R. at 342-349), finding that plaintiff was not disabled because she could return to past

relevant work (R. at 348, 349).  On September 9, 2005, the
Appeals Council vacated the decision of the ALJ and remanded the
case for further hearing (R. at 371-374).

On August 28, 2007, ALJ Rima issued his 2nd decision (R. at
24-35).  Plaintiff is insured for disability insurance benefits
through June 30, 2002 (R. at 27).  At step one, the ALJ
determined that plaintiff has not performed substantial gainful
activity from her alleged onset date of May 31, 2001 through her
date last insured of June 30, 2002 (R. at 27).  At step two, the
ALJ found that plaintiff had the following severe impairment:
degenerative disc disease of the lumbar spine resulting in
myofascial pain (R. at 27).  At step three, the ALJ determined
that plaintiff's impairments do not meet or equal a listed
impairment (R. at 27-28).  After determining plaintiff's RFC (R.
at 28), the ALJ found at step four that plaintiff is able to
perform past relevant work (R. at 33).  In the alternative, at
step five, the ALJ found that plaintiff could perform other jobs
that exist in significant numbers in the national economy (R. at
34-35). Therefore, the ALJ concluded that plaintiff was not
disabled (R. at 35).

**III.  Did the ALJ err in his credibility analysis?**

The framework for the proper analysis of evidence of pain is
that the Commissioner must consider (1) whether claimant
established a pain-producing impairment by objective medical

evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995); Thompson v. Sullivan, 987 F.2d 1482, 1488-89 (10th Cir. 1993); Luna v. Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987).  If an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence. For example, an impairment likely to produce some back pain may reasonably be expected to produce severe back pain in a particular claimant.  Luna, 834 F.2d at 164.  Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone.  Direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced.  Luna, 834 F.2d at 165.  The absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations. When determining the credibility of pain testimony the ALJ should consider the levels of medication and their effectiveness, the

extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.   Thompson, 987 F.2d at 1489.[1]

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.   Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).   Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.   However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.   Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).   Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.   Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

_____

[1]The factors listed in the regulations are similar to the factors noted in Thompson.   They are: objective medical evidence; daily activities; location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications taken to relieve pain or other symptoms; treatment, other than medication, for pain or other symptoms; measures plaintiff has taken to relieve pain or other symptoms; and other factors concerning limitations or restrictions resulting due to pain or other symptoms.   20 C.F.R. § 404.1529(c)(2),(3)(i-vii)(2008 at 381-382).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The ALJ provided a detailed summary of the medical evidence (R. at 28-30). The ALJ made RFC findings largely in accordance with a functional capacity evaluation of April 18, 2002 (R. at 329-333), and the opinions of Dr. Winkler dated April 9, 2003 (R. at 338) (R. at 29, 30).

The ALJ, in his decision, discussed plaintiff's credibility

and allegations of pain in some detail.   That discussion is as

follows:

> After considering the evidence of record, I
> find that the claimant's medically
> determinable impairment could have been
> reasonably expected to produce the alleged
> symptoms, but that the claimant's statements
> concerning the intensity, persistence and
> limiting effects of these symptoms are not
> entirely credible.
>
> At the first hearing on March 25, 2003, the
> claimant testified to constant severe back
> spasms radiating down her left leg and into
> her neck and right shoulder, which were
> exacerbated with any movement. She stated
> that she could not stand longer than 5
> minutes or walk farther than 100 feet at a
> time and had difficulty climbing stairs or
> ambulating on uneven surfaces. The claimant
> stated that FCE testing caused extreme pain
> and necessitated 3 days of bed rest utilizing
> pain medication. She reported that she walked
> only at a quarter of her usual pace and could
> shop by herself but required assistance
> carrying in groceries. The claimant asserted
> that she obtained pain relief only by lying
> down for 5 to 10 minutes and that she
> utilized Percocet every 4 hours for pain. The
> claimant described sleep interruptions every
> 2 hours due to pain.
>
> At the hearing, dated August 14, 2006, the
> claimant testified that she alternated
> sitting and standing, that she had cut down
> her smoking to about one-half pack of
> cigarettes per week, and that she only took
> prescribed medication about once a month
> because it upset her stomach, but that she
> usually took Tylenol or Advil. She further
> testified that she tried to return to work in
> June 2001, but that she was only able to work
> 2 hours. The claimant stated that her
> condition had pretty much stayed the same
> since her previous hearing, despite her
> weight having decreased by 20 pounds. She

further stated that she did not lie down as often as she used to in 2003, that her sleep was better since she has been taking Doxofin, and that she only got up one time at night.

The claimant's statements at the hearing were essentially consistent with each other and her statements to medical sources have been consistent. However, the claimant's testimony showed much greater limitations than described to medical sources. There are no reports of the degree of pain and limitations described during testimony. In this regard, the claimant complained of back pain on April 2, 2001; however, by April 3, 2001, she wanted a release to return to work the following week, she had no complaints at that time, and she was given a note to return to work without restrictions. When seen on April 5, 2001, the claimant felt that she was getting a lot better, and she really had no complaints (Exhibit 1F). The claimant again complained of low back and neck pain, but Dr. Murati stated that x-rays of the cervical and lumbar spine had shown only mild lumbar scoliosis, a nerve conduction study had been normal, and an MRI of the lumbar spine had demonstrated only a very minimal central bulge at the L4-5 level without encroachment into the neural foramina and no spinal stenosis (Exhibit 4F). When examined on January 29, 2002, the claimant's physical examination did not show motor, reflex, or sensory deficits, her MRI had been essentially unremarkable, and all her discs were hydrated. Furthermore, an MRI of the lumbar spine had shown no evidence for a herniated disc, and a bone scan of the whole body had been within normal limits (Exhibit 2F/27 and 29). Finally, on April 25, 2002, Dr. Murati released the claimant to return to work with the FCE restrictions (Exhibit 12F).

The claimant's testimony that her pain was disabling to the extent that she was unable to engage in work activity is not supported by her description of her daily activities prior to June 30, 2002. A third party

10

statement was completed by the claimant's
husband, Larry Landwehr, dated March 17,
2002, stating that the claimant spent a
typical day doing small household chores,
reading, and resting. He stated that the
claimant cooked simple meals, shopped (but
avoided lifting), and did light household
chores. Mr. Landwehr stated that the claimant
was no longer able to mop or sweep and had
restricted social activities to an occasional
movie or short visits with relatives (Exhibit
8E). In Activities of Daily Living forms,
dated September 23, 2001 and March 18, 2002,
the claimant reported living in a house with
her husband, cooking light meals, doing
laundry and light household chores, feeding
and watering their dogs in an outdoor kennel,
paying bills, shopping (using a wheelchair or
motorized electric store cart), driving,
reading books and magazines, and visiting
with her mother-in-law once or twice a week
(Exhibits 6E and 7E). The level of inactivity
described by the claimant does not appear
medically necessary. There are no medical
recommendations for use of a wheelchair and
no documentation of any limitations in
ambulation. The claimant's descriptions of
worsening pain and increasing limitations
such that she can no longer sweep or vacuum
is not supported by the medical evidence,
which shows no significant changes in the
claimant's impairments. Although the claimant
disputed the findings of the functional
capacity evaluation, which showed that she
should be able to perform light work for an
8-hour day (Exhibit 13F/165), her orthopedic
specialist considered these results valid and
issued a work release based on these
restrictions (Exhibit 12F/156).

The claimant utilized medications of
Diltiazem, Detrol, Protonix, Zocor,
Nortriptyline, Trazodone, and Percocet
(Exhibit 15E/62). While the claimant's
husband stated in March 2002 that pain
medication affected the claimant's capacity
to focus (Exhibit 8E/48), the claimant is no
longer taking the same pain medications as

> she was in March 2002 (Exhibit 7E/42). She
> testified that she only took prescribed
> medication about once a month because it
> upset her stomach, but that she usually took
> Tylenol or Advil. It is noted that this
> over-the-counter pain medication is generally
> considered a mild pain relief remedy.
> Furthermore, the claimant has been able to
> drive, use the internet to pay bills, and
> read 2 hours a day, activities which require
> significant amounts of focus and
> concentration (Exhibit 7E/43-44), indicating
> that she is able to maintain adequate focus
> and concentration for work activity.
>
> After a thorough review of the evidence of
> record, including the claimant's allegations
> and testimony, forms completed at the request
> of Social Security, the objective medical
> findings, medical opinions, and other
> relevant evidence, I find the claimant
> capable of performing work consistent with
> the residual functional capacity established
> in this decision.

(R. at 31-33).

Plaintiff argues that the ALJ erred by failing to address
many of the factors to be considered when evaluating a claimant's
complaints of pain (Doc. 9 at 11). However, the ALJ need not
discuss every relevant factor in evaluating pain testimony.
Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). As
noted above, a formalistic factor-by-factor recitation of the
evidence is not necessary so long as the ALJ sets forth the
specific evidence he relied on in evaluating the claimant's
credibility. White, 287 F.3d at 909. The ALJ has discussed in
detail the specific evidence he relied on in evaluating
plaintiff's testimony.

With many of plaintiff's arguments, plaintiff seeks to have the court reweigh the evidence.  However, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Plaintiff also argues that the ALJ failed to mention or discuss certain medical records which plaintiff contends supports her claims of disabling pain.  While the ALJ must consider all of the evidence, an ALJ is not required to discuss every piece of evidence.  The ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects.  <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  The court finds that the ALJ in this case has complied with the requirements set forth in <u>Clifton</u> in regards to his credibility findings.  He set forth in detail the evidence supporting his findings, he discussed plaintiff's allegations of disabling pain, and the ALJ gave specific reasons for rejecting plaintiff's

13

allegations of disabling pain.

Plaintiff points out the finding of the ALJ that plaintiff's testimony "showed much greater limitations than described to medical sources.  There are no reports of the degree of pain and limitations described during testimony" (R. at 32).  Plaintiff then contends that, in that discussion, the ALJ failed to note that plaintiff's treating physician during this time provided temporary restrictions from all work for the period from July 23, 2001 through April 25, 2002 (Doc. 9 at 5).  However, the ALJ had previously noted that Dr. Murati began issuing temporary work bans on September 5, 2001, and that he released plaintiff to work with restrictions on April 25, 2002 (R. at 29).  Thus, except for the time period from July 23, 2001 until September 5, 2001, the ALJ did acknowledge the work bans issued by plaintiff's treating physician.[2]

However, the ALJ asserted that there are "no" reports in the medical records of the degree of pain and limitations described by plaintiff during her testimony.  Plaintiff points to statements of pain and limitations in the medical records which provide at least some support for her testimony and statements in

---

[2]Dr. Murati signed six forms indicating that plaintiff could not work at this time (temporary), from September 5, 2001 through February 9, 2002 (R. at 224-229).  However, Dr. Murati's treatment notes of July 23, 2001 and August 9, 2001 indicated that he had instructed plaintiff not to work and had placed plaintiff off of work temporarily (R. at 219, 223).

this case (Doc. 9 at 6-8).  Plaintiff alleged an onset date of
May 31, 2001, and she was last insured through June 30, 2002.  A
physical therapy record from October 2001 indicates that
plaintiff, with activities, has pain of 9 on a scale of 1-10.
The record also indicates that activities that require sitting
and walking increase the pain and causes tingling and numbness in
her legs (R. at 249).  A visit with Dr. Murati on February 28,
2002 indicates that plaintiff was experiencing an increase in
pain, and that patches and the TENS unit were not helping.
Plaintiff reported that the only thing that helped a little bit
was lying down or putting a heating pad on the area (R. at 202).
Therefore, it was not entirely accurate for the ALJ to state that
there were "no" reports by plaintiff in the medical records of
the degree of pain and limitations as she described in her
testimony.

Because a credibility assessment requires consideration of
all the factors in combination, when several of the factors
relied upon by the ALJ are found to be unsupported or
contradicted by the record, this court is precluded from weighing
the remaining factors to determine whether they, by themselves,
are sufficient to support the ALJ's credibility determination.
Romero v. Apfel, 221 F.3d 1352 (table), 2000 WL 985853 at *4
(10th Cir. July 18, 2000);  Robinson v. Apfel, 172 F.3d 63
(table), 1999 WL 74025 at *3 (10th Cir. Feb. 17, 1999);

Bakalarski v. Apfel, 131 F.3d 151 (table), 1997 WL 748653 at *3
(10th Cir. Dec. 3, 1997); Kochase v. Astrue, Case No. 07-1190-
MLB, 2008 WL 852123 at *9 (D. Kan. March 28, 2008, Doc. 14 at 21-
22).

In this case there was only one error in the ALJ's
credibility analysis.  The remainder of the ALJ's credibility
analysis is closely and affirmatively linked to substantial
evidence.  The ALJ found that plaintiff's claims of worsening
pain and increasing limitations are not supported by the medical
evidence, and found that plaintiff's level of inactivity, as
described by plaintiff, did not appear to be medically necessary
(R. at 33).  On April 18, 2002, a physical functional capacity
evaluation was done by a physical therapist (R. at 29, 33, 329-
333).  Dr. Murati, plaintiff's treating physician, released the
patient to work on April 25, 2002 based on the April 18, 2002
evaluation (R. at 29, 33, 324).  The ALJ gave substantial weight
to this evaluation and the opinion of Dr. Murati that plaintiff
could work within the limitations set by that evaluation (R. at
29-30, 33).  Finally, the ALJ gave substantial weight to the
opinions of a medical expert, Dr. Winkler, who offered an opinion
regarding plaintiff's RFC on April 9, 2003 (R. at 29, 338).  The
ALJ's RFC findings largely incorporate the limitations contained
in the April 18, 2002 evaluation and the opinions of Dr. Winkler
(R. at 28, 329, 338).

After examining the record as a whole, and reviewing the findings of the ALJ, the court finds that the balance of the ALJ's credibility analysis, even after consideration of the one error in that analysis by the ALJ, is nonetheless closely and affirmatively linked to substantial evidence.  See Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record."); Kochase, 2008 WL 852123 at *9, Doc. 14 at 20-23 (Despite one error in the ALJ's credibility analysis, the court held that the ALJ's credibility analysis was nonetheless closely and affirmatively linked to substantial evidence).  The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).

**IV.  Did the ALJ err by disregarding the opinion of Dr. Lies, a treating physician, that plaintiff had fibromyalgia?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is

generally entitled to less weight than that of a treating
physician, and the opinion of an agency physician who has never
seen the claimant is entitled to the least weight of all.
Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When
a treating source opinion is inconsistent with the other medical
evidence, the ALJ's task is to examine the other medical source's
reports to see if they outweigh the treating source's reports,
not the other way around.  Treating source opinions are given
particular weight because of their unique perspective to the
medical evidence that cannot be obtained from the objective
medical findings alone or from reports of individual
examinations, such as consultive examinations.  If an ALJ intends
to rely on a nontreating physician or examiner's opinion, he must
explain the weight he is giving to it.  Hamlin v. Barnhart, 365
F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally
sufficient explanation for rejecting the opinion of treating
medical sources in favor of non-examining or consulting medical
sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity
of the claimant's impairments should be given controlling weight
by the Commissioner if well supported by clinical and laboratory
diagnostic techniques and if it is not inconsistent with other
substantial evidence in the record.  Castellano v. Secretary of
Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating

physician opinion is not given controlling weight, the ALJ must

nonetheless specify what lesser weight he assigned the treating

physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083

(10th Cir. 2004).  A treating source opinion not entitled to

controlling weight is still entitled to deference and must be

weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

     After considering the above factors, the ALJ must give good

reasons in his decision for the weight he ultimately assigns the

opinion.  If the ALJ rejects the opinion completely, he must then

give specific, legitimate reasons for doing so.  Watkins, 350

F.3d at 1301.

     An ALJ must evaluate every medical opinion in the record,

although the weight given to each opinion will vary according to

the relationship between the disability claimant and the medical

professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir.

2004).  In the determination of issues reserved to the

Commissioner, such as opinions regarding: whether an impairment
meets or equals a listing, plaintiff's RFC, whether a plaintiff
can do past relevant work, how age, education, and work
experience apply, and whether a plaintiff is disabled, treating
source opinions are not entitled to special significance or
controlling weight.  Soc. Sec. Rul. 96-5p, (Medical Source
Opinions on Issues Reserved to the Commissioner), 1996 WL 374183,
at *2.  However, even on issues reserved to the Commissioner,
including the RFC determination and the ultimate issue of
disability, opinions from any medical source must be carefully
considered and must never be ignored.  Social Security Ruling
(SSR) 96-5p, 1996 WL 374183 at *2-3.

In July 2003, Dr. Lies indicated that plaintiff's primary
diagnosis was fibromyalgia (R. at 467, 468).  The ALJ concluded
that the existence of fibromyalgia could not be medically
determined (R. at 27).  The ALJ noted that this diagnosis in 2003
was after the date last insured (R. at 27).[3]  Furthermore, the
ALJ relied on the opinion of Dr. Winkler, who opined, after
reviewing the medical records of Dr. Lies, that plaintiff's

---

[3]The ALJ relied on a report from Dr. Lies dated December 2,
2003 in which he diagnosed fibromyalgia (R. at 455).  After the
ALJ decision, additional evidence was submitted by plaintiff to
the Appeals Council (R. at 8, 12) indicating that Dr. Lies
diagnosed fibromaylgia as of July 3, 2003 (R. at 467, 468).
However, the ALJ is nonetheless correct that the diagnosis was
not made until (one year) after the date plaintiff was last
insured (June 30, 2002).

symptoms are not fully suggestive of fibromyalgia (R. at 27, 30, 466).  Dr. Winkler indicated that plaintiff was diagnosed with myofascial pain syndrome, which Dr. Winkler described as a milder form or more regional form of fibromyalgia (R. at 466).  The ALJ found that plaintiff had a severe impairment of myofascial pain (R. at 27).  Dr. Winkler stated that fibromyalgia requires the presence of pain in all four quadrants, as well as the presence of 11 of 18 trigger points.  Dr. Winkler indicated that the records of Dr. Lies do not demonstrate pain in all four quadrants, or the location or number of fibrositic points (R. at 466).  Although the record of Dr. Lies of July 3, 2003 indicates that plaintiff was tender at "most fibrocytic points," Dr. Lies himself stated that the primary diagnosis is "most likely fibromyalgia" (R. at 468).  Dr. Lies did not indicate that plaintiff had pain in all four quadrants.

The evidence contains two conflicting opinions by two medical professionals.  The ALJ has relied on the fact that plaintiff was not diagnosed with fibromyaglia until after the expiration of her insured status, and has adopted the reasons given by Dr. Winkler for disputing the opinion of a treating physician, Dr. Lies, that plaintiff has fibromyalgia.  As noted above, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  The court can only review the sufficiency of the evidence.  Substantial evidence in the

record supports the finding of the ALJ that the existence of fibromyalgia could not be medically determined, and the ALJ has provided a legally sufficient explanation for rejecting the diagnosis of Dr. Lies, a treating physician, in favor of Dr. Winkler, a non-examining medical expert.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on March 27, 2009.


s/Donald W. Bostwick
DONALD W. BOSTWICK
United States Magistrate Judge